No. 24-12456-J

================================

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
————————————

UNITED STATES OF AMERICA,

*Plaintiff/appellee,*

v.

FABIANO SANTOS-SEGATTO,

*Defendant/appellant.*
————————————

On Appeal from the United States District Court
for the Southern District of Florida
————————————

INITIAL BRIEF BY APPELLANT FABIANO SANTOS-SEGATTO
————————————

HECTOR A. DOPICO
INTERIM FED. PUBLIC DEFENDER
ANDREW L. ADLER
ASS'T FEDERAL PUBLIC DEFENDER
Counsel for Appellant
1 E. Broward Blvd., Suite 1100
Ft. Lauderdale, FL 33301
(954) 356-7436

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL CASE)

================================

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

## United States v. Fabiano Santos-Segatto
## Case No. 24-12456-J

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, as required by 11th Cir. R. 26.1.

Adler, Andrew L.

Berry, Scott G.

Caruso, Michael

Dopico, Hector A.

Keller, Zachary A.

Leibowitz, Hon. David S.

Lapointe, Markenzy

Matzkin, Daniel

Nathan, Daya

Otazo-Reyes, Hon. Alicia M.

Reinhart, Hon. Bruce E.

Rosenberg, Hon. Robin L.

Santos-Segatto, Fabiano

United States of America

## STATEMENT REGARDING ORAL ARGUMENT

As explained below, this case presents an issue of first impression—not just in this Circuit but anywhere—about which immigration agencies may "find" a non-citizen in the United States for purposes of the illegal re-entry statute in 8 U.S.C. § 1326(a) and its five-year limitations period. Accordingly, Mr. Santos-Segatto respectfully requests oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT ................................. i

TABLE OF CITATIONS ................................................................ iii

STATEMENT OF JURISDICTION .......................................................... 1

STATEMENT OF THE ISSUE ............................................................. 2

INTRODUCTION .............................................................................. 3

STATEMENT OF THE CASE .............................................................. 4

    I.    Course of Proceedings & Disposition Below ............................... 4

    II.   Facts ........................................................................................ 5

    III.  Standards of Review ................................................................ 13

SUMMARY OF THE ARGUMENT ......................................................... 14

ARGUMENT AND CITATIONS TO AUTHORITY ................................. 15

    A.    USCIS "found" Santos-Segatto no later than 2016 ................... 16

    B.    The government's arguments are unpersuasive ....................... 17

        1.    The government's position lacks any legal support .......... 18

        2.    The government's policy arguments backfire. ................. 25

CONCLUSION .................................................................................... 29

CERTIFICATE OF COMPLIANCE ......................................................... 30

CERTIFICATE OF SERVICE .................................................................. 31

# TABLE OF CITATIONS

## **Cases**

*Hallstrom v. Tillamook Cnty.*,
  493 U.S. 20 (1989) .................................................................. 18

*Iselin v. United States*,
  270 U.S. 245 (1926) ............................................................... 18

*Toussie v. United States*,
  397 U.S. 112 (1970) ......................................................... 15, 26

*United States v. Acevedo*,
  229 F.3d 350 (2d Cir. 2000) ............................................... 20

*United States v. Clarke*,
  312 F.3d 1343 (11th Cir. 2002) ............................... 18, 20, 24

*United States v. Couer*,
  196 F.3d 1344 (11th Cir. 1999) .......................................... 20

*United States v. Gilbert*,
  136 F.3d 1451 (11th Cir. 1998) .......................................... 26

*United States v. Gomez*,
  38 F.3d 1031 (8th Cir. 1994) ......................................... 20, 27

*United States v. Gunera*,
  479 F.3d 373 (5th Cir. 2007) ........................................ 20, 28

*United States v. Hernandez*,
  189 F.3d 785 (9th Cir. 1999) .............................................. 20

*United States v. Lennon*,
  372 F.3d 535 (3d Cir. 2004) ............................................... 20

*United States v. Louis*,
  86 F.3d 1330 (11th Cir. 2017) ............................................ 13

*United States v. Marion,*
    404 U.S. 307 (1971) ............................................................. 26

*United States v. Palomino Garcia,*
    606 F.3d 1317 (11th Cir. 2010) ............................ 13, 15, 19–20, 22–24

*United States v. Ramirez-Salazar,*
    819 F.3d 256 (5th Cir. 2016) ................................................. 23

*United States v. Santana-Castellano,*
    74 F.3d 593 (5th Cir. 1996) .................................................. 20

*United States v. Scott,*
    447 F.3d 1365 (11th Cir. 2006) ........................................ 20, 27

*United States v. Shamsid-Deen,*
    61 F.4th 935 (11th Cir. 2023) ............................................... 13

*United States v. Uribe-Rios,*
    558 F.3d 347 (4th Cir. 2009) ................................................ 24

## Statutes

8 U.S.C. § 1326(a) ................................ i, 2–4, 14–15, 18–19, 24–25, 27–29
18 U.S.C.
    § 3231 ........................................................................ 1
    § 3282(a) .................................................................... 15
28 U.S.C. § 1291 ................................................................. 1

## Rules

Fed. R. Crim. P. 29 ................................................... 4, 9, 12, 17

## Other Authorities

USCIS, About Us, What We Do ................................................ 21

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. This Court has jurisdiction under 28 U.S.C. § 1291, which confers jurisdiction on the courts of appeals from final decisions of district courts. Mr. Santos-Segatto timely noticed an appeal on July 30, 2024 (DE 46) from the district court's final judgment entered on July 29, 2024 (DE 45).

## STATEMENT OF THE ISSUE

Whether a non-citizen may be "found" in the United States for purposes of 8 U.S.C. § 1326(a) *only* by criminal investigators at Homeland Security Investigations ("HSI")—and *not* by civilian immigration authorities at U.S. Citizenship and Immigration Services ("USCIS").

## INTRODUCTION

The illegal re-entry statute makes it a crime for non-citizens to be found in the United States without permission. 8 U.S.C. § 1326(a). The five-year statute of limitations runs from the moment they are "found."

As explained below, this case presents an issue of first impression about which agencies may do the "finding." This Court has repeatedly held that "immigration authorities" can find the non-citizen. In this case, the joint factual stipulation reveals that "immigration authorities"—namely, U.S. Citizenship and Immigration Services ("USCIS")—obtained actual knowledge that Mr. Santos-Segatto was illegally present in the United States no later than 2016. Because this prosecution did not commence until 2023—over five years later—it was time barred.

To escape that conclusion, the government argued below that *only* criminal investigators at Homeland Security Investigations ("HSI") could make the "finding" necessary to trigger the statute of limitations. Here, that did not occur here until 2023. Although the government cited no case law to support that argument, the district court accepted it and therefore deemed this prosecution timely. As explained below, however, that was an error of law requiring the reversal of Mr. Santos-Segatto's conviction.

**STATEMENT OF THE CASE**

## I.      Course of Proceedings & Disposition Below

In 2023, Mr. Santos-Segatto was charged in a one-count indictment with being an alien who, having previously been removed from the United States in 2003, was "found to be in the United States" without permission in March 2023, in violation of 8 U.S.C. § 1326(a). (DE 1).

Mr. Santos-Segatto proceeded to a stipulated bench trial. The only dispute was *when* he was "found" in the United States and thus when he completed the offense. While the indictment alleged that he was found in 2023, he argued that he had been "found" in the United States earlier due to immigration applications that had been filed in 2005 and 2015. As a result, he argued, the five-year statute of limitations had long expired.

The parties and district court agreed that this issue was properly teed up and preserved for appeal by a Rule 29 motion for a judgment of acquittal. (DE 53:5–6). Following the submission of legal memoranda (DE 28, 29, 36, 39) and argument at the trial (DE 53:17–42), the court denied Mr. Santos-Segatto's Rule 29 motion and adjudicated him guilty (DE 53:42–48). Expressing great sympathy, the court sentenced him to time served and six months of supervised release. (DE 45; DE 53:57–62).

## II. Facts

1. The parties' joint trial stipulation revealed the following facts.

Mr. Santos-Segatto is a native and citizen of Brazil. (DE 27-1 ¶¶ 1(a), 4). In 2003, he was removed from the United States. (*Id*. ¶¶ 1(b), 5). In 2004, he re-entered without authorization. (*Id*. ¶¶ 1(c)–(d), 6).

In March 2023, Mr. Santos-Segatto was arrested by Florida state law enforcement for working as a security guard without a license. He ultimately pleaded guilty to a misdemeanor offense. (*Id*. ¶ 2). At the time of his arrest, Florida state law enforcement alerted Homeland Security Investigations ("HSI") to his presence in the United States. (*Id*. ¶ 3). According to the government, that is the point when was "found" here.

Mr. Santos-Segatto, however, relied on an I-765 application and an I-130 petition to argue that he was "found" here earlier. Those documents are "immigration-related requests . . . that are evaluated by United States Citizenship and Immigration Services ('USCIS'), which is an agency separate from HSI that is within DHS." (*Id*. ¶ 8). "USCIS does not itself independently investigate Title 8 offenses based on I-765 applications and I-30 petitions and does not ordinarily refer them for further investigation, except generally in matters involving fraud, public

safety, or national security." (*Id*. ¶ 12). "While HSI does investigate Title 8 offenses for criminal prosecution, it does not normally receive or review I-765 applications or I-130 petitions for approval because that approval process falls under the purview of USCIS." (*Id*. ¶ 13). In addition, "HSI does not have direct access" to those documents but "must instead request a subject's Alien File ('A-File') from USCIS to receive them." (*Id*.).

In 2005, Mr. Santos-Segatto filed an I-765 application with USCIS. (*Id*. ¶ 16). "I-765 applications are for non-citizens present in the United States who are seeking authorization to work in the United States." (*Id*. ¶ 9). "In [his] Application, Mr. Santos-Segatto listed himself as residing in Deerfield Beach, Florida." (*Id*. ¶ 17). "USCIS denied the Application on or about May 24, 2005, sending Mr. Santos-Segatto a notice of that decision to his listed residence in Deerfield Beach, Florida." (*Id*. ¶ 18). Notably, "USCIS did not receive any indication that the notice sent to th[at] address . . . had not been delivered or was returned." (*Id*.).

In 2015, Mr. Santos-Segatto's wife—an American citizen who he married in 2005—file an I-130 petition with USCIS. (*Id*. ¶¶ 22–23). "I-130 petitions are submitted by people with closer personal relationship to certain alien relatives, such as spouses, to establish the existence of a

relationship to that relative who wishes to immigrate to the United States." (*Id.* ¶ 10). In the petition, his wife "included [his] correct A-Number, and [she] listed Santos-Segatto as 'EWI,' which means having 'entered without inspection.' 'Entered without inspection' is a designation that applies to anyone who has entered into the United States without formal permission for any reason." (*Id.* ¶ 23). His wife also "indicated that Mr. Santos-Segatto was residing at an address in Deerfield Beach, Florida, albeit a different address" than in 2005. (*Id.* ¶ 24). That brings us to the most important fact in this case: "On January 19, 2016, USCIS sent a notice to [his] Wife's attorney stating that '[t]he petition indicates that the person for whom you are petitioning *is in the United States and will apply for adjustment of status*.'" (*Id.*) (emphasis added).

The I-130 petition also "sought consular processing by the Brazilian consulate, which means that the person who is the subject of the petition wished to conduct the interview abroad." (*Id.* ¶ 25). "In USCIS's experience, the fact that the beneficiary of the I-130 petition is requesting an interview at a foreign consulate indicates that the person is living abroad—here, in Brazil." (*Id.*). But, again, USCIS understood that, in this particular case, Mr. Santos-Segatto was "in the United States." (*Id.* ¶ 24).

HSI, by contrast, did not become aware of Mr. Santos-Segatto's presence in the United States until March 2023. (*Id.* ¶ 14). It did not have direct access to his A-File and did not request it until then. (*Id.*). Nor did HSI know about either of the two filings until 2023. The 2005 I-765 application was not submitted to HSI or included in the A-File, and HSI did not become aware of it until November 2023 when defense counsel brought it to the government's attention. (*Id.* ¶¶ 20–21). The I-130 petition was not included in his A-File due to an "administrative error," and HSI did not become aware of it until September 2023. (*Id.* ¶¶ 27–28).

2.	In light of the undisputed facts above, the dispositive question of *when* Mr. Santos-Segattos was "found" turned on *who* could find him.

The government argued that he could be found *only* by HSI as the criminal, law-enforcement arm of DHS. In the government's view, he could not be found by USCIS because, as DHS's "civilian apparatus," it did not investigate or typically refer Title 8 offenses. A contrary ruling, the government argued, would inefficiently require USCIS to comb through filings for Title 8 violations. And it would upend the immigration structure created by Congress in 2002 when it abolished INS and created separate agencies within DHS like USCIS, HSI, and CBP to oversee

different aspects of the immigration system. Under the facts here, the government argued that HSI exercised reasonable diligence in finding Mr. Santos-Segatto only after his arrest in 2023, not after his earlier filings with USCIS. (*See* DE 28:1, 7–12; DE 36:1–4, 6–8; DE 53:33–40). In response to a question at the trial, the government confirmed that the "core" of its position was that a filing with USCIS can lead to a defendant being "found" "only if it gets passed to law enforcement or if law enforcement agencies should have asked by reasonable diligence," but "it's not enough for an I-130 or 765 to be given to USCIS." (DE 53:39–40).

Mr. Santos-Segatto disagreed, arguing that it sufficed for "immigration authorities" to find him, and USCIS was such an authority. In that regard, he argued there was no case holding that "immigration authorities" are limited to HSI. And, in this case, he twice provided truthful information to USCIS, making it aware that he was illegally present in the United States. (*See* DE 29; DE 39; DE 53:17–32, 40–42).

The district court denied his Rule 29 motion. The court agreed with the government that "[t]he inquiry is precisely this. It is a factual question of what *criminal investigators* knew or with reasonable diligence could have known." (DE 53:43) (emphasis added). In other

words, according to the court, "the question is in this case was there anything that made it unreasonable for *HSI or some other law enforcement agency* to not request information which would then absolutely start the clock." (*Id*. at 44) (emphasis added). The court found that HSI did not act unreasonably in this case. The court emphasized that USCIS did not investigate Title 8 offenses and did not ordinarily refer I-765 applications or I-130 petitions to HSI, and HSI would have to request someone's A-File to receive them. (*Id*. at 44–45). The court acknowledged that, unlike other cases, there was "no falsification in this case," in that Mr. Santos-Segatto submitted accurate information. (*Id*. at 45). But while this was an "important point," the court did not believe that it changed the outcome. (*Id*.). The court also observed that most of the case law in this area was "old" and involved the INS, not DHS. (*Id*.).

**3.** After adjudicating Mr. Santos-Segatto guilty, and with the recommendation of the parties, the court went straight to sentencing. All agreed that the guideline range here was 0–6 months. (*Id*. at 49–51).

The government recommended a sentence of time served, which was effectively a sentence of "zero days." (*Id*. at 51). The government explained that Mr. Santos-Segatto had "been here for a long time," "[h]e

10

has a family that he's supported," he "has no criminal history other than this arrest," and, although a bond in these cases was "unusual," he had complied with his bond conditions for nearly a year. (*Id*. at 51–52).

Defense counsel began by reading Mr. Santos-Segatto's statement. In the statement, he admitted to the illegal re-entry offense, but explained that he came to the country to work and help his wife—an American citizen then battling blood disease and cancer—raise her two young children. (*Id*. at 53). They since had a third child together who wanted to follow his grandfather, who had been a famous judge in Brazil. (*Id*. at 53–54). He explained that, since being in the country, he had received an online degree in religious studies, gotten married, and purchased property. (*Id*. at 54). He "never hid for who I was," and he "tried several times to make things right, even hiring lawyers to assist me, but I was not successful. I am sorry I could not figure out how to be here legally. I just hope you and this great country can forgive me." (*Id*.).

In joining the government's recommendation for time served, defense counsel proffered additional facts about Mr. Santos-Segatto, including that, when entering the country with "coyotes," he saved people from drowning and prevented the "coyotes" from raping women. (*Id*.

at 55). And while he was in this country, he saved a state trooper who was being accosted by someone on the side of the road. (*Id*. at 56). Defense counsel opined that "the system has gotten this [case] wrong," in that "this is not someone that we should be deporting" but rather "someone we should be welcoming into our country" because "he is an asset." (*Id*.).

The District Judge explained that, although he had only become a judge recently, "[t]his is by far the hardest thing I've been asked to do," and, although he thought the law required it, he took "no happiness whatsoever in adjudicating Mr. Santos-Segatto's guilt and denying his Rule 29." (*Id*. at 58). The court "completely credit[ed]" Mr. Santos-Segatto's "extremely powerful statement," and it "absolutely credit[ed]" the additional facts proffered by defense counsel. (*Id*. at 57, 59). The court emphasized that there was "nothing whatsoever aggravating" about the "equities" of this case apart from the illegal re-entry, and it agreed with defense counsel that the immigration laws "failed here." (*Id*. at 58, 60–61). The court concluded that "no one would be happier" if the Eleventh Circuit were to reverse the conviction, for "if ever an appellate court was going to consider the equities, if they were to see fit to modify or change the law, boy, Mr. Santos-Segatto and his case is that case." (*Id*. at 61).

## III. Standards of Review

"It is well settled that questions of statutory construction are legal determinations that [this Court] review[s] *de novo*." *United States v. Shamsid-Deen*, 61 F.4th 935, 946 (11th Cir. 2023). Accordingly, this Court "review[s] *de novo* the district court's interpretation and application of the statute of limitations." *United States v. Palomino Garcia*, 606 F.3d 1317, 1322 (11th Cir. 2010) (quotation omitted).

This Court also "review[s] *de novo* a district court's denial of a motion for acquittal. When considering claims regarding sufficiency of the evidence, we view the evidence in the light most favorable to the government. If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Louis*, 86 F.3d 1330, 1333 (11th Cir. 2017) (citations omitted).

## SUMMARY OF THE ARGUMENT

This prosecution was time-barred. Under 8 U.S.C. § 1326(a), the five-year statute of limitations begins to run when the non-citizen defendant is "found" in the United States. This Court has repeatedly held that this occurs when "immigration authorities" know or reasonably could have discovered his illegal presence. Here, the joint stipulation reveals that U.S. Citizenship and Immigration Services ("USCIS")—one of our federal "immigration authorities"—obtained actual knowledge that Mr. Santos-Segatto was illegally present in the United States no later than 2016. Because this case was not brought until 2023, it was untimely.

To avoid that result, the government argued that a non-citizen may be "found" under § 1326(a) *only* by Homeland Security Investigations ("HSI"), DHS's criminal investigators. But that argument lacks any legal support. The statutory text contains no such limitation. And no decision anywhere in the country has adopted it. Because no legal authority supported the government's argument, it was forced to rely heavily on policy. But such arguments should be directed to Congress. And the only policies relevant here are those underlying the statute of limitations— like the need for repose—which all weigh in favor of Mr. Santos-Segatto.

## ARGUMENT AND CITATIONS TO AUTHORITY

"Under 8 U.S.C. § 1326(a), an alien is subject to imprisonment if he has been previously deported, and then 'is at any time found in' the United States without having obtained the express consent of the Attorney General to reapply for admission." *Palomino Garcia*, 606 F.3d at 1322–23. Because "Section 1326(a) does not provide a statute of limitations," the "general five-year limitations period for noncapital offenses in 18 U.S.C. § 3282(a) therefore applies." *Id*. at 1323. As a result, "an indictment charging a § 1326(a) offense must be handed down within five years of the date on which the offense is 'complete.'" *Id*. (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970)). And that particular offense "is not complete—and the statute of limitations does not begin to run—until the illegal immigrant is 'found in' the United States." *Id*.

The issue here is thus not *whether* but *when* Mr. Santos-Segatto was "found" in the United States. The government's theory below was that he was found *by HSI* in 2023 after Florida state law enforcement arrested him and alerted HSI. By contrast, Mr. Santos-Segatto's theory below was that he was found in the United States *by USCIS* when it discovered his presence after the submission of his 2005 I-765 application

15

or his wife's 2015 I-130 petition. Either way, he argued, the 2023 indictment was brought beyond the five-year statute of limitations.

## A. USCIS "found" Santos-Segatto no later than 2016.

Based on the undisputed facts of this case in the parties' joint stipulation, USCIS obtained actual knowledge that Mr. Santos-Segatto was illegally present in the United States no later than January 19, 2016.

In 2005, he filed the I-765 application—which "are for non-citizens present in the United States who are seeking authorization to work in the United States"—and listed an address in Deerfield Beach. USCIS sent him a denial letter to that address without any indication that it had not been delivered. (DE 27-1 ¶¶ 9, 16–18). Thus, as early as 2005, USCIS actually knew that Mr. Santos-Segatto was present in the United States.

But most important is USCIS's response to his wife's I-130 petition. In 2015, she filed the petition, included his A-Number, listed an address for him in Deerfield Beach, and noted that he had "entered without inspection"—a "designation that applies to anyone who has entered into the United States without formal permission for any reason." (*Id*. ¶¶ 23–24). Thus, Mr. Santos-Segatto's wife informed USCIS in 2015 that he had entered the country illegally and was then residing in Deerfield Beach.

Critically, on January 19, 2016, "USCIS sent a notice to Wife's attorney stating that '[t]he petition indicates that the person for whom you are petitioning *is in the United States* and will apply for *adjustment of status*." (*Id*. ¶ 24) (emphasis added). Thus, based on USCIS's own written notice, it had obtained actual knowledge that Mr. Santos-Segatto was present in the United States and intended to apply for legal status.

As a result, Mr. Segattos-Santos was "found" in the United States by USCIS no later than 2016. And because this prosecution was not commenced until 2023—more than five years later—it was time-barred.

**B.    The government's arguments are unpersuasive.**

To avoid this conclusion, the government argued below that USCIS could not be the one to "find" Mr. Santos-Segattos because it was the civilian immigration arm of DHS. Instead, the government argued, he could be found *only* by HSI because it was the criminal law-enforcement arm of DHS. (*See* DE 28:1, 7–12; DE 36:1–2; DE 53:33–41). Mr. Santos-Segatto disagreed, arguing that USCIS could (and did in fact) find him. (*See* DE 29:1, 5; DE 39; DE 53:18–22, 26–27, 40–41). Thus, the dispositive question here of *when* he was "found" turns on *who* can do the finding.

In denying Mr. Santos-Segatto's Rule 29 motion, the district court accepted the government's framing, agreeing that only HSI or some other criminal investigators could find him. (*See* DE 53:43 ("The inquiry is precisely this. It is a factual question of what the *criminal investigators* knew or with reasonable diligence could have known."); *id*. at 44 ("So the question is in this case was there anything that made it unreasonable for *HSI or some other law enforcement* agency to not request information which would then absolutely start the clock") (emphases added)).

As explained below, that was a legal error requiring reversal.

**1.    The government's position lacks any legal support.**

**a.**    This Court has recognized that "§ 1326 is silent as to *who* must find the defendant." *United States v. Clarke*, 312 F.3d 1343, 1347 (11th Cir. 2002). Indeed, the statute contains no qualification about what government agencies are permitted to "find" the non-citizen. And this Court should be especially wary about inserting statutory qualifications that are not contained in the statutory text itself. *See, e.g.*, *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 27 (1989) ("[W]e are not at liberty to create an exception where Congress has declined to do so."); *Iselin v. United States*, 270 U.S. 245, 251 (1926) ("To supply omissions [from a statute]

transcends the judicial function."). Yet the government now asks this Court to further qualify the a-textual qualification that already exists—namely, that the finding must be made by the "immigration authorities."

This Court's precedents provide that a non-citizen is "found in" the United States "when *immigration authorities* either know of or, with the exercise of diligence typical of law enforcement authorities, could have discovered the illegality of the defendant's presence." *Palomino Garcia*, 606 F.3d at 1323 (quotations omitted; emphasis added). The statute, of course, does not say that a non-citizen must be "found in the United States *by immigration authorities*." That qualification is not in the text.

While Mr. Santos-Segattos accepts that qualification as binding precedent, the point here is that the government and the district court qualified that a-textual qualification even further. The district court correctly recited the legal standard above (DE 53:43) but glossed over the key "immigration authorities" phrase. The court then qualified that a-textual qualification even more by adopting the government's position that a non-citizen may be "found" *only* by HSI or criminal investigators.

That additional qualification not only adds qualifying language to § 1326(a)'s text but disregards this Court's precedents. This Court has

repeatedly and consistently used the phrase "immigration authorities"—without any such qualification. In *Palomino Garcia*, this Court used that phrase a *dozen* times in its analysis. 606 F.3d at 1323–25 & n.8. *Palomino Garcia* cited *United States v. Scott*, 447 F.3d 1365 (11th Cir. 2006), which used that phrase *nine* times in its analysis. 447 F.3d at 1368–70. And *Palomino Garcia* and *Scott* both cited *Clarke*, which observed that an earlier precedent of this Court had taken the "immigration authorities" language from an earlier Fifth Circuit decision. *Clarke*, 312 F.3d at 1347 (quoting *United States v. Couer*, 196 F.3d 1344, 1346 (11th Cir. 1999) (quoting and agreeing with *United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996))). Yet at no time has this Court ever suggested that "immigration authorities" is limited *only* to criminal investigators.

Nor has any other Circuit. Like this Court, numerous circuits have employed the same "immigration authorities" phrase.[1] Yet the government below failed to identify any decision from any jurisdiction holding that "immigration authorities" is limited only to criminal

---

[1] *See, e.g.*, *United States v. Gunera*, 479 F.3d 373, 376–77 (5th Cir. 2007); *United States v. Lennon*, 372 F.3d 535, 540–41 (3d Cir. 2004); *United States v. Acevedo*, 229 F.3d 350, 353–56 (2d Cir. 2000); *United States v. Hernandez*, 189 F.3d 785, 789–91 (9th Cir. 1999); *United States v. Gomez*, 38 F.3d 1031, 1035–38 (8th Cir. 1994).

investigators like HSI. In short, the government essentially invites this Court to engraft a novel a-textual limitation (HSI/criminal investigators only) on an already a-textual limitation ("immigration authorities"). As explained further below, its arguments for doing so are unpersuasive.

In the district court, moreover, the government did not dispute that "immigration authorities" include USCIS. Nor could it credibly do so. After all, the very name of the agency is U.S. Citizenship and *Immigration* Services. The joint stipulation of the parties in this case makes clear that USCIS processes and evaluates "immigration-related requests." (*See* DE 27-1 ¶¶ 8, 13, 16, 18, 23–25). And the agency's own website confirms that it is "the federal agency that oversees lawful immigration to the United States." USCIS, About Us, What We Do, https://www.uscis.gov/about-us/mission-and-core-values/what-we-do.

That should resolve the legal dispute here. This Court's precedents have repeatedly held that a non-citizen can be "found" by "immigration authorities." Such "authorities" plainly include USCIS. And no court has limited "immigration authorities" to criminal investigators like HSI.

**b.** Although the government's argument finds no support in the case law, the government sought to excuse that omission on the ground

that the cases were decided before the restructuring of the immigration bureaucracy. Following the Homeland Security Act of 2002, "INS split into three agencies and was reorganized under the new Department of Homeland Security. Under the reorganization, INS became three new agencies: Citizenship and Immigration Services [USCIS], Immigration and Customs Enforcement [ICE, which includes HSI], and Customs and Border Protection [CBP]." *Palomino Garcia*, 606 F.3d at 1321 n.5. Before this structural reorganization, the government emphasized, INS handled everything—both civil immigration processing as well as criminal law enforcement; now the former is handled by USCIS, and the latter by HSI.

Both the government and the district court believed that there was no post-INS case on point. (DE 53:36–37). But while both parties relied on *Palomino Garcia* and discussed it at length, the government and the district court overlooked its significance here. This Court specifically observed that the "case arose in the context of an I-130 Petition and not in the course of a law enforcement investigation." *Palomino Garcia*, 606 F.3d at 1324. That fact alone would have defeated the defendant's argument in that case were the government's position here correct. But it did not. Instead, this Court analyzed "the totality of the circumstances

22

in th[at] case" and only then concluded that the immigration authorities acted with reasonable diligence in investigating the defendant's presence and status. *Id.* at 1325. The legal analysis in *Palomino Garcia* would have been entirely unnecessary were the government's position here correct.

Moreover, the defendant there relied on the submission of the I-130 petition and responses to requests for additional information. *See id.* at 1321–23. While those documents had been received by the INS in 2002, this Court indicated that he was not "found" in the United States until 2004. And, critically, that was *after* USCIS took over the case. The Court observed that USCIS stamped the I-130 petition complete and obtained actual knowledge that he was illegally present in the United States. And the Court emphasized that it was reasonable for USCIS to wait to conduct a status check until after the petition was complete. *See id.* at 1322, 1324–25. This Court's conclusion in *Palomino Garcia* that the defendant was "found" in 2004 by USCIS could not be correct if post-INS "immigration authorities" excluded USCIS, as the government asserts.

Another post-INS case contradicts that argument too. In *United States v. Ramirez-Salazar*, 819 F.3d 256 (5th Cir. 2016), the defendant filed an I-130 petition "with United States Citizenship and Immigration

Services." *Id*. at 257. The Fifth Circuit concluded as follows: "We are not ruling categorically that an I-130 Form can never create the basis for actual knowledge of physical presence. We are only affirming a finding in this case that the document did not put officials on notice." *Id*. at 260. Like *Palomino Garcia*'s reasoning, that conclusion cannot be squared with the assertion that a non-citizen can never be "found" by USCIS.

Finally, and although an INS case, this Court's decision in *Clarke* also undercuts the government's argument. There, state law enforcement officials identified the defendant three years before INS. *Clarke*, 312 F.3d at 1345–46. This Court "conclude[d] that the phrase 'found in' contained in § 1326 refers to the actions of federal immigration officials, not those of state law enforcement officials." *Id*. at 1348. The other circuits have also "uniformly declined to find that state officials' knowledge of an alien's illegal presence in the United States may be imputed to federal immigration authorities." *United States v. Uribe-Rios*, 558 F.3d 347, 353 (4th Cir. 2009); *see Clarke*, 312 F.3d at 1347–48 (citing cases). *Clarke* and these cases illustrate that § 1326(a)'s "found" language is focused *not* on *criminal* law enforcement but rather federal *immigration* enforcement. And, as explained, federal "immigration authorities" include USCIS.

## 2. The government's policy arguments backfire.

The government's remaining arguments below sounded in pure policy. The government argued that, under the current bureaucratic structure, it would be inefficient and dangerous to require HSI to "comb[ ]" through USCIS filings to "find proverbial needles in the immigration form haystack." (DE 28:1; *see id*. at 7–12; DE 39:1–8). Given the government's resort to policy, the district court correctly recognized that the correct "policy" was an issue "entirely for Congress." (DE 53:42).

 Sensing the problem, the government sought to assure the court that its argument was a legal one based on the legislation restructuring the immigration bureaucracy. (*Id*. at 40). But merely citing legislation does not constitute a textual argument. Here, Congress did not amend the text of § 1326 when or after it restructured the INS in the Homeland Security Act of 2002. Notably too, Congress enacted that legislation *after* numerous circuits had employed the "immigration authorities" standard. Yet Congress did not amend § 1326 to specify that only HSI or criminal investigators could "find" non-citizens. If anything, then, that legislation should be deemed a ratification, not a limitation, of the existing standard. And Congress remains free to amend § 1326 at any time if it so wishes.

Meanwhile, the only "policies" that are relevant here are those underlying criminal statutes of limitations. *United States v. Marion*, 404 U.S. 307, 322 n.14 (1971). The Supreme Court has explained that "[t]he purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Toussie*, 397 U.S. at 114–15. "For those reasons and others," the Supreme Court has endorsed "the principle that criminal limitations statutes are to be liberally interpreted in favor of repose." *Id.* at 115 (quotation omitted); *see United States v. Gilbert*, 136 F.3d 1451, 1454 (11th Cir. 1998) ("When doubt exists about the statute of limitations in a criminal case, the limitations period should be construed in favor of the defendant.").

Those policies weigh decisively in favor of Mr. Santos-Segatto. As explained above, he was "found" in the United States no later than 2016 when USCIS sent a notice acknowledging that he was illegally present here. He had every right to rely on that notice. As a result, he had every right to believe that he was free and clear from a § 1326 prosecution after the passage of five years. Otherwise, it is hard to imagine how he would *ever* enjoy repose. Rather, "[he] would be required to live in perpetual fear of prosecution. This approach would essentially strike the statute of limitations from the United States Code." *Gomez*, 38 F.3d at 1037.

USCIS's written acknowledgment makes this case even easier than *Scott*. In that case, this Court held that the non-citizen was "found" during a custodial interview with immigration authorities; during that interview, he accurately advised that he had entered the country illegally, but then the immigration authorities "simply lost track" of him. *Scott*, 447 F.3d at 1369–70. This Court refused to "penalize Scott for a delay that was no fault of his own." *Id*. at 1370. Here, USCIS sent a written notice expressing its own understanding Mr. Santos-Segatto was unlawfully present in the United States. Penalizing him for affirmatively relying on USCIS's own letter would be even more unfair than in *Scott*.

Under the government's rule, meanwhile, defendants could never achieve repose. Given that HSI does not process any immigration-related filings, it is unclear what non-citizens could do to put HSI on notice that they are illegally present in the United States. On the government's view, nothing short of walking into an HSI office and confessing would suffice.

Finally, and in any event, this case does not even present any of the policy concerns that the government raised below. Because this case involves *actual* knowledge by USCIS, it does not require the Court to address whether/when/how USCIS could gain *constructive* knowledge based on reasonable diligence. And, unlike many of the cases in this area, the district court found that Mr. Santos-Segatto's filings were all truthful and not deceptive. (DE 53:45) ("There's no falsification in this case."). *See Gunera*, 479 F.3d at 376–77 (holding that the non-citizen was "found" when an INS computer inquiry identified him as being illegally present, even though his immigration petition had omitted some information).

To sum up, this is a case where Mr. Santos-Segatto's immigration filings were entirely truthful. They repeatedly told USCIS that he resided in the United States. And they even told USCIS that he entered without inspection. As a result, USCIS itself acknowledged in writing that he was

illegally present in the United States. Because that acknowledgment occurred in 2016, and this § 1326(a) prosecution was brought more than five years later, it was untimely. That should be the end of this case. That conclusion does not bar immigration authorities from taking action. But it does bar prosecutors from charging him under § 1326(a) as late as 2023.

## CONCLUSION

This Court reverse Mr. Santos-Segatto's conviction as time-barred.

Respectfully submitted,

HECTOR A. DOPICO
 INTERIM FEDERAL PUBLIC DEFENDER

*/s/ Andrew L. Adler*
ANDREW L. ADLER
  ASS'T FEDERAL PUBLIC DEFENDER
  Counsel for Appellant
  1 E. Broward Blvd., Suite 1100
  Ft. Lauderdale, FL 33301
  (954) 356-7436

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 5,701 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in New Century Schoolbook 14-point font.

*/s/ Andrew L. Adler*

## CERTIFICATE OF SERVICE

I certify that on this 21st day of August 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day via CM/ECF on Daniel Matzkin, Assistant U.S. Attorney, 99 N.E. 4th Street, Suite 523, Miami, FL 33132.

*/s/ Andrew L. Adler*